OPINION OF THE COURT
Phillip R. Rumsey, J.
Defendant Urologix, Inc. manufactures the Targis System, which utilizes microwave energy to heat and destroy hyperplastic prostate tissue to treat the symptoms caused by benign prostatic hyperplasia, or an enlarged prostate, in a procedure known as transurethral microwave therapy (TUMT). On July 11, 2001, defendant Dr. Kardjian used the Targis System to perform TUMT on plaintiff William D. Lake.[1] Following the procedure, plaintiff continued to experience problems with incomplete voiding and obstruction of his urine flow. Within a few weeks, he began to complain of symptoms of incontinence. Dr. Kardjian determined that plaintiffs urethra had been damaged, as evidenced by the presence of necrotic tissue, and that his urinary sphincter had also been damaged. Plaintiff represents that he thereafter underwent numerous surgeries and procedures, in an unsuccessful attempt to treat his incontinence. He commenced this action seeking compensation for his injuries, in relevant part, asserting five separate causes of action under New York law against Urologix, which now moves for summary judgment seeking dismissal of all claims asserted against it.[2]
Urologix notes that the Targis System is regulated as a class III device under the Medical Device Amendments of 1976 (MDA) (21 USC § 360c et seq.) to the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA) (21 USC § 301 et seq.) and argues, therefore, that plaintiffs’ claims are barred in their entirety by the doctrine of federal preemption. The MDA imposes a detailed regime for federal regulation of medical devices, to be administered by *962 the Food and Drug Administration (FDA), and contains an express preemption clause (see 21 USC § 360k [a]). Resolution of defendant’s motion turns largely upon the recent United States Supreme Court decision defining the scope of state law claims that are preempted by the MDA. (Riegel v Medtronic, Inc., 552 US —, —, 128 S Ct 999, 1004 [2008].)
The MDA establishes three levels of oversight for medical devices, depending on the risk of illness or injury they pose to the public.[3] The devices receiving the most oversight are those in class III, which must receive premarket approval from the FDA before they may be marketed to the public. This approval regime is a “rigorous” process (552 US at —, 128 S Ct at 1004 [citation omitted]), requiring that a manufacturer submit detailed information — typically a multivolume application — about the design, manufacture, safety, and effectiveness of the device. This process includes FDA review of all proposed labeling for the device. Once a device receives premarket approval, the MDA forbids the manufacturer from making any changes in design, specifications, manufacturing processes, labeling, or any other attribute that would affect safety or effectiveness of the device, unless it first obtains FDA approval. The Targis System received premarket approval (PMA) in 1997.
Riegel holds that claims asserted under New York law for strict liability, breach of implied warranties, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of a class III device which receives PMA are preempted by the MDA (see Riegel, 552 US at —, 128 S Ct at 1006). The Supreme Court further noted that the MDA would likewise preempt “a jury determination that the FDA-approved labeling for a [class III device] violated a state common-law requirement for additional warnings” (552 US at —, 128 S Ct at 1011).[4] Thus, after Riegel, the only claim asserted by plaintiff against *963 Urologix not clearly preempted by the MDA is his breach of express warranty claim (see 552 US at — n 2, 128 S Ct at 1006 n 2; Parker v Stryker Corp., 584 F Supp 2d 1298, 1302 [D Colo 2008]).
However, a breach of express warranty claim based upon FDA-approved statements in product labeling and advertising is preempted by the MDA, because such a claim would impose requirements different from, or in addition to, the federal requirements, potentially resulting in the imposition of liability on a manufacturer who has fully complied with federal law (Carter v Novartis Consumer Health, Inc., 582 F Supp 2d 1271, 1284-1285 [CD Cal 2008] [interpreting the preemption clause set forth at 21 USC § 379r, which is substantially identical to the MDA’s preemption clause set forth at 21 USC § 360k (a)]; accord Parker, 584 F Supp 2d at 1302-1303; see also Rattay v Medtronic, Inc., 482 F Supp 2d 746, 762-763 [ND W Va 2007]). To state a viable claim that a manufacturer has breached an express warranty — one that will escape federal preemption — requires that a plaintiff identify specific representations of the manufacturer which exceed the scope of the FDA-approved statements, thereby establishing a contractual obligation voluntarily entered into by the manufacturer (Carter, 582 F Supp 2d at 1284-1285; Parker, 584 F Supp 2d at 1302-1303; Rattay, 482 F Supp 2d at 762-763). The only competent evidence before the court on this motion relating to an express warranty is deposition testimony of plaintiff and Linda Lake that they were provided with pamphlets and a videotape by Dr. Kardjian (transcript of examination before trial of William Lake and Linda Lake, attached as exhibit R to Laird affidavit, at 35-40, 85-86). Neither the pamphlets nor the videotape (or a transcript thereof) have been provided to the court, notwithstanding the fact that plaintiff s counsel apparently received the videotape during the course of discovery (see transcript of examination before trial of Timothy Parker, attached as exhibit T to Laird affidavit, at 35). Plaintiff has not identified any specific statements by Urologix which would constitute an express warranty, and has thereby failed to establish the existence of a *964 claim which would escape federal preemption and survive this motion to dismiss.[5]
Rather than claim that there is no preemption under the facts presented, plaintiff argues that the failure of Urologix to report incidents in which the Targis System may have caused or contributed to a serious injury deprives Urologix of the benefit of federal preemption.[6] This argument fails, because claims that a manufacturer has violated the MDA in some respect do not diminish or impair the applicability of the doctrine of federal preemption. In fact, such claims are impliedly preempted by federal law, because enforcement of the FDCA, including the MDA, is the sole province of the federal government (see Buckman Co. v Plaintiffs’ Legal Comm., 531 US 341, 348-349 [2001]); there are no private causes of action for noncompliance with the MDA (id. at 349 n 4). While not raised by plaintiff, the alleged failure of Urologix to comply with the MDA’s reporting requirements does not constitute a “parallel claim” which would escape preemption (Riegel, 552 US at —, 128 S Ct at 1011), because such an allegation would merely be an attempt to recast plaintiffs state law claims as violations of federal statutes (see Parker, 584 F Supp 2d at 1301 [an FDA finding that a class III device is “adulterated” within the meaning of 21 USC § 351 (h) is insufficient to support a parallel claim under the MDA]).
Linda Lake’s claims against Urologix, being derivative of plaintiffs claims, are likewise preempted by the MDA.
Urologix’s motion for summary judgment, dismissing the complaint against it, is hereby granted.

. His wife, Linda Jean Lake, having brought a derivative claim against all defendants, including Urologix, is also a named plaintiff.

. Neither of the remaining defendants, Drs. Kardjian and Omarbasha, have asserted cross claims against Urologix and neither have opposed this motion.

. This summary of the relevant provision of the MDA is excerpted from Riegel (552 US at —, 128 S Ct at 1003-1005).

. Plaintiff’s claim for breach of the duty to warn is also barred by the learned intermediary doctrine, because the information provided to Dr. Kardjian by Urologix warned that treatment with the Targis System had the potential to cause the very adverse effects which plaintiff allegedly suffered (see Quality Outcomes Training Manual, attached as exhibit V to affidavit of Edward D. Laird, Jr., sworn to Mar. 17, 2008 [Laird affidavit], at 8, 24, 117; Instruction for Use & User Manual, attached as exhibit W to Laird affidavit at 4; see Martin v Hacker, 83 NY2d 1 [1993]; Banker v Hoehn, 278 AD2d 720 [2000]). In addition, Dr. Kardjian demonstrated independent awareness of such potential adverse effects prior to his treatment of plaintiff (transcript of *963 examination before trial of Paul M. Kardjian, M.D., attached at exhibit S to Laird affidavit, at 51, 55-57, 61; see Banker, 278 AD2d at 722).

. Plaintiff has filed a trial note of issue and certificate of readiness for trial certifying that discovery is complete; he is obligated to submit the evidence on which he relies in opposing defendant’s motion (see Denton Pubis, v Lilledahl, 112 AD2d 658 [1985]).

. The MDA mandates such reporting by manufacturers of medical devices. (See 21 USC § 360i [a]; 21 CFR 803.50.)